# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHARLES SCHIAVO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N24C-07-135 FWW |
| v. | ) | |
| | ) | |
| CLOVER NETWORK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: June 6, 2025
Decided: July 28, 2025

*Upon Defendant Clover Network's Motion to Dismiss Amended Complaint*

**GRANTED**

## MEMORANDUM OPINION AND ORDER

Charles Schiavo, 829B Culbreath Street, Smyrna, DE 19977, Plaintiff, *pro se*.

Christina B. Vavala, Esquire; Stephen J. Kraftshick, Esquire, POLSINELLI, PA, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801, attorneys for Defendant Clover Network, LLC.

**WHARTON**, **J.**

## I. INTRODUCTION

On February 19, 2025 this Court granted Defendant Clover Network, LLC's ("Clover") Motion to Dismiss Plaintiff Charles Schiavo's ("Schiavo") Complaint in this case[1] and his Complaint in a companion case, *Charles Schiavo v. TD Bank USA National Association.*[2] Despite being brought separately, the original complaints were based on the same set of operative facts. They alleged generally that Clover, in concert with TD Bank USA National Association ("TD Bank"), fraudulently deprived him of a credit card payment in the amount of $10,175.00.[3] He sought compensatory damages in the amount of $25,000.00 and punitive damages of $150,000.00.[4] After sifting through Schiavo's unstructured Complaint, the Court identified two possible causes of action – breach of contract and theft, but found that Schiavo had failed to state a claim for either.[5] Documents integral to the Complaint confirmed that Schiavo had no contract with Clover and there was no theft.[6]

---

[1] *Schiavo v. Clover Network, LLC,* 2025 WL 551690 (Del. Super. Ct. Feb. 19, 2025, corrected Feb. 28, 2025).
[2] *Schiavo v. TD Bank USA National Association,* 2025 WL 551742 (Del. Super. Ct. Feb. 19, 2025).
[3] Compl., D.I. 1.
[4] *Id.*
[5] *Schiavo v. Clover Network, LLC,* 2025 WL 551690, at *4.
[6] *Id.*

Schiavo was granted leave to amend his Complaint, but with conditions. Among those conditions were that: (1) any amended complaint must comply with the pleading requirements of Superior Court Civil Rules 8(a), 9(b) (if fraud were alleged), 10 (especially 10(b)), and 15(aa); (2) each claim must state all of the elements necessary to allege each claim.[7] Additionally, the Court permitted Schiavo, if he chose, to join both Defendants in a single amended complaint.[8] Finally, the Court admonished Schiavo that it would strike any amended complaint that included language personally attacking opposing counsel or the Court.[9] This last warning was necessary to dissuade Schiavo from continuing to submit intemperate filings attacking counsel and the Court.[10]

On May 1, 2025, Schiavo filed his 27-page Amended Complaint.[11] Although both Defendants are joined in a single Amended Complaint, Schiavo curiously expresses his opposition to joinder.[12] Clover again moves to dismiss under Superior

---

[7] *Id.* at *5.
[8] *Id.*
[9] *Id.*
[10] Before he filed his Amended Complaint, the Court was forced to find Schiavo in civil contempt due to his persistent *ad hominum* attacks on both opposing counsel and the Court. *Schiavo v. Clover Network, LLC,* 2025 WL 1088547 (Del. Super. Ct. Apr. 11, 2025).
[11] Amend. Compl. D.I. 79.
[12] *Id.* at ⁋ 2. Apparently, Schiavo misreads the Court's language granting him permission to file a single amended complaint as the Court requiring him to do so. *See, Id.*

Court Civil Rule 12(b)(6).[13]   The motion contends that: (1) Schiavo's breach of contract claim is based on Clover's alleged breach of the terms of a processing agreement he had with Clover, but Clover is not a party to any processing agreement with Schiavo; (2) Schiavo fails to allege the necessary elements of fraud; and (3) Schiavo fails to state a claim for unlawful practice under the Delaware Consumer Fraud Act.[14]   Alternatively, Clover asks the Court to dismiss the Amended Complaint due to Schiavo's continued disregard of this Court's Orders.[15]

After carefully considering the parties contentions and the record, Clover's motion is **GRANTED** for two independent reasons.  First, the Amended Complaint, like its predecessor, fails to state a claim upon which relief can be granted.  Second, Schiavo's Amended Complaint fails to follow this Court's rules and orders despite being on notice of the consequences of such failure.  The Amended Complaint is **DISMISSED WITH PREJUDICE**.

## II.    FACTS AND PROCEDURAL HISTORY

Schiavo initiated this action when he filed a Complaint against Clover in July 2024.[16]  He followed that Complaint with a separate one against TD Bank the next

---

[13] Def.'s Mot. to Dismiss, D.I. 82.
[14] *Id.* at ⁋ 1.
[15] *Id.* at Sec. IV.
[16] Compl., D.I. 1.

month based essentially on the same set of facts.[17]  Generally, his Complaint against Clover set out the following: (1) Schiavo owns Jems Classic Autos ("Jems");[18] (2) Jems signed an estimate with Asplundh Engineering ("Asplundh") to repair a 2023 Ford F-150 turbo vehicle for approximately $29,000.00, less a 10% discount;[19] (3) on May 26, 2024, Kevin Coin ("Coin"), a representative of Asplundh and an authorized user of its credit card, paid Jems $9,500.00 for repairs completed to date;[20] (4) the payment was made by credit card over the telephone with a Clover representative guiding Schiavo and Coin through the process;[21] (5) the payment was credited to Jems account on May 28, 2024;[22] (6) on June 1st, Coin made a second payment of $9,500.00;[23] (7) this payment also was made by credit card over the telephone, but this time without the assistance of a Clover representative;[24] (8) on June 3rd, this second $9,500.00 payment was credited to Jem's account; [25] (9) on or

---

[17] Compl., *Schiavo v. TD Bank USA National Association*, N24C-08-107 FWW, D.I. 1.

[18] Compl. at ⸿ 4, D.I. 1.  The paragraphs in the Complaint were  not numbered.  For reference purposes, the Court assigned them numbers sequentially.

[19] *Id.* at ⸿ 6.

[20] *Id.*

[21] *Id..*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at ⸿ 7.  There is some confusion about the dates because ⸿ 6 reads, "On June 15th the second 9,500-dollar credit card payment was credited to the Jems bank account on 6-3-24;" *Also see,* Ex. D.

about June 16th, Coin made a third credit card payment of $10,175.00;[26] (10) this payment was never credited to Jem's account "specifically due to fraudulent activity by Clover," according to the Complaint.[27]

Based on those facts and other allegations, Schiavo brought claims for fraud and theft.[28] Clover moved to dismiss under Rule 12(b)(6).[29] It argued that it had no contractual arrangement with Schiavo and that he had failed to particularize his fraud allegation.[30] After briefing and oral argument jointly with Schiavo's suit against TD Bank, the Court dismissed the Complaint without prejudice to Schiavo to file an amended complaint.[31] But, because of the unstructured nature of Schiavo's Complaint, his disregard of pleading rules, including paragraph numbering requirements, and his intemperate comments both in his pleadings and at oral argument, the Court imposed conditions on the filing of an amended complaint. Those conditions were: (1) any amended complaint must comply with the pleading requirements of Rules 8(a); 9(b) (if fraud were alleged), 10 (especially 10(b)), and

---

[26] *Id.* at ⁋ 8.
[27] *Id.*
[28] *See generally,* Compl., D.I. 1.
[29] Mot. to Dismiss, D.I. 11.
[30] *Id.*
[31] *Schiavo v. Clover Network, LLC,* 2025 WL 551690, at *5.

15(aa); and (3) any amended complaint that included language personally attacking opposing counsel or the Court would be stricken.[32]

Schiavo filed his Amended Complaint on May 1, 2025.[33]  He availed himself of the Court's offer to allow him to file a single Amended Complaint against both defendants, but opposed joinder for trial.[34]  Before Schiavo filed his Amended Complaint, however, the Court found it necessary to hold him in civil contempt as a result of his contumacious language in several of his filings subsequent to the Court's decision dismissing his Complaint.[35]

The Amended Complaint improves upon the Complaint in at least one respect – the paragraphs are numbered in compliance with Rule 10(b).[36]  Unfortunately, his claims for relief are not "short and plain statement[s] of the claim[s]" showing his entitlement to relief as required by Rule 8(a).[37]  Nor is each claim founded upon a separate transaction or occurrence stated in a separate count as required by Rule

---

[32] *Id.*
[33] Amend. Compl., D.I. 79.
[34] *Id.* at ¶ 2.
[35] *Schiavo v Clover Network, LLC,* 2025 WL 1088547 (Del. Super. Ct. Apr. 11, 2025).
[36] Super. Ct. Civ. R. 10(b). ("All averments of claim or defense shall be made in numbered paragraphs, the contents of which shall limited as far as practicable to a statement of a single set of circumstances…").
[37] Super. Ct. Civ. R. 8(a).

10(b).[38]  Finally, the Amended Complaint does not indicate how it differs from the Complaint as required by Rule 15(aa).[39]

Substantively, much of the Amended Complaint is given over to criticism of opposing counsel and the Court's decision dismissing his Complaint.  In fact, according to Schiavo, documentation obtained subsequent to the Complaint…"[40] The Amended Complaint does raise a new claim of a violation of the Delaware Consumer Fraud Act ("DCFA").[41]  It adds more detail to his communications with Clover and TD Bank and further expands on the circumstances related to the return of the unsuccessful third payment of $10,175.00 to Asplundh's Bank of America account.

Clover moved to dismiss the Amended Complaint on May 20th.[42]  Schiavo submitted his Response on the June 18th.[43]

### III.  THE PARTIES' CONTENTIONS

---

[38] Super. Ct. Civ. R. 10(b).  ("Each claim founded upon a separated transaction or occurrence  and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.").

[39] Super. Ct Civ. R. 15(aa).  ("A party serving an amended pleading shall indicate plainly in the amended pleading in what respect the amendment differs from the pleading which it amends.").

[40] Amend. Compl. at ℙ 1 (emphasis in original), D.I. 79.

[41] *Id.* at ℙ 1.

[42] Mot. to Dismiss Amend. Compl., D.I. 82

[43] Pl.'s Resp., D.I. 85.

Clover's Motion to Dismiss the Amended Complaint makes three arguments for dismissal under Rule 12(b)(6). It also makes a fourth argument based on Schiavo's continued disregard of the Court's orders. Schiavo's breach of contract claim is based on an allegation that Clover breached a "legal and binding agreement[] to process credit card payments."[44] But, Clover has no processing agreement with Jems.[45] Rather, Jems entered into a Merchant Processing Application and Agreement ("Processing Agreement") with TD Bank.[46] According to Clover, under the Processing Agreement, Jems contracted with TD Bank to process and settle Jems' transactions and Clover merely provided point of sale terminals and software to Schiavo to utilize for those transactions.[47] Further, Schiavo's breach of contract claim is identical to its previously dismissed claim in his Complaint and should be dismissed for that reason.[48]

Second, Clover contends that Schiavo has failed to sufficiently plead fraud. It argues that Schiavo has failed to allege with particularity that Clover made a

---

[44] Def.'s Mot. to Dismiss Amend. Compl. at ⫸ 4 (quoting the Amended Complaint at ⫸ 4.), D.I. 82.
[45] Id.
[46] Id. Clover attaches a copy of its agreement with TD Bank to the Motion as Ex. A.
[47] Id. at ⫸ 5.
[48] Id. at ⫸ 7

misrepresentation to him upon which he relied.[49]  At most, Schiavo alleges that Clover made misrepresentations that others relied upon.[50]

Third, Clover maintains that Schiavo's DCFA claim fails as a matter of law.[51] In Clover's view, not only did Schiavo fail to allege that Clover made any misrepresentation to him as required under the DCFA, but all of the alleged conduct took place after Schiavo entered into the Processing Agreement with TD Bank and thus cannot be "in connection with" the sale or advertisement of services.[52]

Finally, Clover's fourth basis for dismissing the Amended Complaint is that Schiavo has continued to ignore the Court's Orders.  Specifically, Clover cites: (1) Rule 8(a)'s requirement that the pleadings contain "a short and plain statement of the claim;" (2) Rule 9(b)'s requirement that allegations of fraud be pleaded with particularity; (3) Rule 10's requirement that the numbered paragraphs be limited "to a statement of a single set of circumstances;" (4) Rule 15(aa)'s requirement that the Amended Complaint "indicate plainly" how it differs from the original Complaint; and (5) Schiavo's continued *ad hominem* attacks on counsel and the Court.[53]

---

[49] *Id.* at ¶ 11.
[50] *Id.*
[51] *Id.* at Sec. III.
[52] Mot. to Dismiss Amend. Compl., at ¶¶ 15, 16, D.I. 82.
[53] *Id.* at ¶¶ 19-23.

Schiavo's Response is less a defense of the Amended Complaint against the specific arguments made by Clover than it is an attack on Clover's counsel. He does not address Clover's argument concerning his breach of contract claim, except to say that "Clover committed a felony, which is a breach of contract, fraud, and a clear violation of Delaware State Law."[54] Nor does he address its argument concerning his DCFA claim. He does vigorously dispute Clover's contention that he has failed to plead fraud with particularity, but those disputations are mostly conclusory.[55]

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[56] The Court's review is limited to the well-pled allegations in the complaint.[57] In ruling on a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[58] Dismissal is warranted "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[59] However, the Court will "ignore conclusory allegations that

---

[54] *Id.* at ¶ 6.
[55] *See id.* at ¶¶ 1, 2, 6, 7, 8, 9, 10, and 12.
[56] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[57] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[58] *Id.*
[59] *Id.*

11

lack specific supporting factual allegations."[60]  The Court may, "despite allegations to the contrary," dismiss a complaint "where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[61]

## V. DISCUSSION

### A. Breach of Contract Claim.

Clover's breach of contract claim argument is simple – it did not breach the terms of any processing agreement it had with Jems because it was not a party to any processing agreement with Jems.[62]  The Processing Agreement was between Jems and TD Bank.[63]  Clover inarguably is correct – it is not a party to the Processing Agreement.[64]  Therefore, Schiavo has failed to state a claim for breach of contract. Additionally, by failing to address Clover's argument regarding his breach of contract claim, the Court deems Schiavo to have waived opposition to it.[65]

---

[60] *Ramunno v. Cawley,* 705 A.2d 1029, 10345 (Del. 1998).
[61] *Tigani v. C.I.P. Assocs., LLC,* 2020 WL 2037241, at v*2 (Del. Apr. 27, 2020) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 Del. 2001).
[62] *Id.* at ⁋ 4.
[63] *Id.* at ⁋ 5.
[64] *Id.* at Ex. A.
[65] *Murphy v. State,* 662 A.2d 1150, 1152 (Del. 1993) ("The failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim"); *see also Emerald Partners v. Berlin,* 726 A.2d. 1215, 1224 (Del. 1999) (citing *Murphy,* 632 A.2d at 1152) ("Issues not briefed are deemed waived.").

## B. Fraud Claim.

In order to survive a motion to dismiss a fraud claim, the party alleging fraud must allege that: "(1) the defendant falsely represented a material fact or omitted facts that the defendant had a duty to disclose; (2) the defendant knew that the representation was false or made with a reckless indifference to the truth; (3) the defendant intended to induce plaintiff to act or refrain from action; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance on the defendant's representation."[66]

Superior Court Civil Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[67] The particularity pleading standard requires a party to plead "the time, place and contents of the false representations."[68] However, "[m]alice, intent, knowledge, and other condition of a person may be averred generally."[69] The requirement that fraud be pleaded with particularity "serves to discourage the

---

[66] *ITW Glob. Invs., Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.,* 2015 WL 3970908, at *5 (Del. Super. Ct. Jun. 24, 2015).
[67] Super. Ct. Civ. R. 9(b).
[68] *ITW Glob. Invs., Inc.,* at *5.
[69] Super Ct. Civ. R. 9(b).

initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude."[70]

The first step for the Court in analyzing the viability of Schiavo's fraud claim is to identify a false representation made by Clover to Schiavo. The Court has carefully read and re-read the Amended Complaint several times and can find only one allegation of a representation made by Clover to Schiavo.[71] That representation, found at Paragraph 17 of the Amended Complaint, states:

> After Plaintiff received the first two credit card payments of $9,500.00 from Asplundh Engineering, I received a phone call from a Clover representative named Ava, stating that Clover was instructing TD Bank to hold the third credit card payment of 10,175 dollars for six months because of unfounded allegations of fraud on the part of Asplundh Engineering and Jems Classic Autos.[72]

But, according to Schiavo, that representation is not false, nor did he misunderstand it, because he alleges Clover did exactly what "Ava" said it was going to do by instructing TD Bank to hold the third payment.[73] As a result, Schiavo has failed to allege the first element of fraud – that Clover made a false representation to him.

---

[70] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993).

[71] The Amended Complete is rife with accusations that Clover's counsel made false representations, but, obviously, counsel's comments cannot be retroactively bootstrapped into an allegation of fraud in the initial transaction.

[72] Amend. Compl. at ¶ 17, D.I. 79.

[73] *Id.*

Further, he has failed to allege that "Ava" knew the representation was false, that she intended him to act or refrain from acting on it, and that he acted in justifiable reliance on it.

## C. Delaware Consumer Fraud Act Claim.

Under the DCFA, a private cause of action is available to victims of consumer fraud.[74] The DFCA, 6 *Del. C.* § 2513, states:

> (a) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.[75]

The Amended Complaint makes passing references to the DFCA, but nowhere does it attempt to lay out allegations corresponding to the elements of a violation of the Act. It fails to allege any misrepresentation Clover made to Schiavo "in connection with the sale, lease or advertisement of any merchandise." In fact, the only representation "Ana" made to Schiavo as Clover's representative was well after its equipment was placed with Jems. Additionally, as with his breach of contract claim,

---

[74] 6 *Del. C.* § 2525.
[75] 6 *Del. C.* § 2513(a).

15

Schiavo has failed to present any argument in opposition to Clover's motion on his DCDA claim. Thus, his opposition is deemed waived.

**D. Failure to Comply with the Court's Orders.**

In both its decision dismissing Schiavo's Complaint and its Order finding him in civil contempt, the Court expressly warned Schiavo that he must follow the Superior Court Civil Rules if he chose to file an amended complaint. In particular, he was directed to comply with the pleading requirements of Rules 8(a), 9(b) if he alleged fraud, 10, especially 10(b), and 15(aa).[76] It further admonished him to be civil.[77]

In its Motion to Dismiss the Amended Complaint, Clover argues alternatively that the Amended Complaint should be dismissed for Schiavo's failure to comply with the Courts's rules. Specifically, it faults the Amended Complaint for not containing "a clear short and plain statement of its claim[s]" as required by Rule 8(a), failure to allege fraud with the particularity as required by Rule 9(b), failure to limit its paragraphs to "a statement of a single set of circumstances" as required by Rule 10, and failure to identify where the Amended Complaint differs from the original as

---

[76] *Schiavo v. Clover Network, LLC,* 2025 WL 551690, at \*5; *Schiavo v. Clover Network, LLC,* 2025 WL 1088548, at \*3.
[77] *Id.*

required by Rule 15(aa).[78]  Finally, Clover maintains that the Amended Complaint fails to adhere to both the Court's Order dismissing the Complaint and its Order finding Schiavo in civil contempt by continuing his "baseless allegations of impropriety and ad hominum attacks against both the Court and opposing counsel…"[79] The Court treats this request as a motion to dismiss under Rule 41(b) – "For failure of the plaintiff to prosecute *or to comply with these Rules, or any order of the Court,* a defendant may move for dismissal of an action, or any claim against the defendant."[80]

In each instance, Clover is correct.  It is obvious from the face of the Amended Complaint that it does not comply with Rules 8(a), 10, and 15(aa).  The Amended Complaint levels most of its allegations of fraud against opposing counsel.  It does not comply with Rule 9(b) because it does not state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations as well as what he obtained thereby."[81]  Ordinarily, the Court gives considerable leeway to *pro se* litigants due to their unfamiliarity with the law and rules of the Court.  Here, however, Schiavo has been pointed to specific rules and directed to follow them.  The Rules bring order to the Court's proceedings.  Schiavo's

---

[78] Def.'s Mot. to Dismiss at Sec. IV, D.I. 82.
[79] *Id.* at ‖ 24.
[80] Super. Ct. Civ. R. 41 (emphasis added).
[81] Super. Ct. Civ. R. 9(b).

persistent refusal to follow them has had the opposite effect. He was warned of the consequences of litigating the case by "Schiavo's Rules" and now he must face the consequence of dismissal. Because the Court imposes the maximum sanction of dismissal, it is useful to set out a sufficient enough portion of the record to capture the magnitude of Schiavo's transgressions against the Court and opposing counsel.

The Court has had to chastise Schiavo on multiple occasions for his continuous misbehavior throughout this litigation. The first occasion was after Schiavo filed motions to strike[82] and to sanction opposing counsel[83] following argument on Clover's initial motion to dismiss. On December 18, 2024, the Court entered an order striking both motions.[84] The Court held that, to the extent the motions "accuse[d] counsel of misconduct, the Court found them impertinent and scandalous."[85] It explained that:

> [w]hile the Court grants considerable leeway to *pro se* litigants such as Mr. Schiavo, it does not grant them license to make intemperate and defamatory accusations against opposing counsel. Contrary to Mr. Schiavo's apparent belief, as demonstrated in these and prior filings, every disagreement with opposing counsel, even where he believes them to be factually incorrect, is not an opportunity for him to accuse them of dishonesty and professional misconduct. The Court admonishes Mr. Schiavo to temper the language of any future filings.

---

[82] D.I. 25.
[83] D.I. 26.
[84] D.I. 28.
[85] *Id.* at 2.

18

*Failure to do so runs the risk of the Court imposing appropriate sanctions against him*.[86]

Two days later, the Court admonished Schiavo again. In an Order dated December 20, 2024, the Court struck Schiavo's motions to amend his complaints in both actions which were filed before he received the Court's December 18th Order.[87] It did so because they "[n]ot only repeat[ed] Mr. Schiavo's *ad hominum* attacks on opposing counsel, but they broaden[ed] the scope of his vituperative to include the Court."[88] The Court warned him that the Court will not consider any further filings "that include *ad hominum* attacks on anyone, including opposing counsel and the Court."[89] It also noted that even if the motions to amend were not stricken, they would be denied because they did not conform to Rule 15(aa).[90]

Schiavo next induced Frank Cascino, Vice President – Manager of Asplundh Engineering Services to write the Court.[91] Schiavo did so on the false representation to Mr. Cascino that "the TD Bank/Clover lawyers have accused [Mr. Cascino] of being involved in money laundering with [Schiavo]."[92] The tone of Mr. Cascino's

---

[86] *Id.* at 2-3 (emphasis added).
[87] D.I. 29, at 1-2.
[88] *Id.* at 2.
[89] *Id.*
[90] *Id.*
[91] D.I. 30.
[92] *Id.* at 1.

letter was justifiably indignant – Mr. Cascino was "outraged and angry that TD Bank/Clover lawyers [had] accused Jems and myself of money laundering with no evidence … I am not a litigious person but I am so incensed that I am considering legal action against TD Bank/Clover."[93]  When asked at the civil contempt hearing to identify where counsel had made that accusation, after a pause of more than five minutes, Schiavo identified a comment at page 15, line 9 of the transcript of argument on the Defendants' motions to dismiss the Complaint.  That comment was made by neither counsel for Clover, nor TD Bank.  Instead, the Court, addressing counsel for TD Bank, said:

> Well, you know, I am sort of curious here, because it seems from reading things that this…although you alluded to sort of a suspicious transaction, and, you know, I understand that you have these dollar amounts in the $10,000 range, roughly, occurring close together, that there can be structuring considerations.[94]

In fact, counsel for TD Bank said, addressing that same issue:

> …but I would note Mr. Schiavo's own allegations are that with a new customer, with whom it did not have a prior course of dealing, he has multiple transactions just under $10,000 in close proximity, which, if you don't know anything about those transactions, could look like structured transactions designed to evade reporting requirement.

---

[93] *Id.* at 2.
[94] Hr'g. Tr. (Dec. 9, 2024) at 15:9-16, D.I. 32.

> *There is nothing untoward about such transactions, but it is also nothing that is reasonable conceivable that could be wrong about asking additional questions about them.*[95]

Schiavo's false accusations have not only unfairly maligned opposing counsel in the eyes of a non-party, but also exposed them and their clients to potential litigation.

Mr. Schiavo communicated with Jason Blusk, docketing a letter to him on February 10, 2025 that Schiavo wrote on February 4th.[96]  Mr. Blusk is identified in the letter as "VP Operations Manager Merchant Solutions."[97]  Mr. Blusk works for TD Bank.[98]  In the letter, Schiavo demands that TD Bank "remit all money that was stolen from my bank account, Jems Classic Autos, which would include the cash in the Jems Classic Autos account at the time my account was fraudulently back charged by TD Bank for the 10,175 dollars failed credit card payment I should have received from my customer Asplundh Engineering."  He also threatens to take action with the F.B.I. and the Comptroller of the Currency whom he copies on his letter.[99]  Contacting an employee of a represented party directly threatening criminal action in

---

[95] *Id.* at 7:11-8:1.
[96] D.I. 33.
[97] *Id.*
[98] *Id.*
[99] *Id.*

21

order to gain an advantage in a civil action would not be looked upon favorably if Schiavo were an attorney.

Schiavo docketed another letter – this one to the Court – on February 10th. In that letter he described meeting with the FBI, the Comptroller of the Currency, and the State of Delaware Bank Commissioner.[100] He described a comment by the Court at oral argument that "It sounds like Mr. Schiavo's dispute is not with TD Bank but Asplundh Engineering" as representing:

> an extremely dangerous distorted understanding of reality, which everyone 1) the FBI,  2) the Office of the Comptroller of the Currency, 3) the ladies from the Delaware State Banking Commissioner's Office have confirmed that your ignorance of the facts on the case after six months should be considered intolerable.[101]

In commenting on oral argument, he wrote, "Trust me, it was everything I could do watching you pompous blowhards ack [sic] like you were better than me while I was the one telling the truth and you Judge Farris [sic] W. Wharton and the attorneys for TD Bank and Clover were lying and placating each other, it was despicable, hypocritical and completely unprofessional."[102]   He closed by citing Scripture:

> Therefore, it is important to realize the hypocrisy displayed in your dismissal of my motion to strike the lies

---

[100] D.I. 34.
[101] *Id.*
[102] *Id.*

advanced by the attorneys for TD Bank and Clover, the Bible addresses your actions specifically, "Woe to those who call evil good and good evil." Isaiah 5:20, this Bible verse highlights a significant ethical concern that has been relevant throughout history, particularly in the Delaware Court system. This verse warns against the tendency of individuals or societies to mislabel actions, behaviors, or ideologies that are inherently wrong (evil) as acceptable or (good) and vice versa. Therefore, Judge Farris [sic] W. Wharton when you denied my motion to strike the lies (evil) advanced by the attorneys for TD Bank and Clover you were calling evil good and my truth evil, this type of bigoted understanding of reality cannot be tolerated in a courtroom, consequently I am requesting you to recuse yourself so that I can maybe get a fair trial assuming I can get passed [sic] the next hurdle which is getting a trial by jury.[103]

In response the Court granted Schiavo permission to file a motion asking the Court to recuse itself. But it reminded him that his motion "must not go beyond the bounds of civility to which the Court holds all litigants, including *pro se* litigants" and **"[f]ailure to adhere to the bounds of propriety will result in the same fate as his prior impertinent filings."**[104] No such motion was filed.

Schiavo filed another letter with the Prothonotary on February 13, 2025.[105] In it he complains about a letter he received from non-party Radius Global Solutions, LLC alleging that he owed TD Bank $10,175.00. He states that he is "talking to the

---

[103] *Id.*
[104] *Id.*
[105] D.I. 36.

23

FBI about filing criminal complaints against everyone involved in this chicanery [presumably including the Court]."[106]

On February 19, the Court issued its decision dismissing Schiavo's Complaint against Clover without prejudice.[107] Leave was granted to file an amended complaint on the following conditions:

> 1.    Any Amended Complaint shall comply with the pleading requirements of Superior Court Civil Rules 8(a), 9(b) (if fraud is alleged), and 10 (especially 10(b));
>
> 2.    Each claim shall state all of the elements necessary to allege such claim or risk dismissal with prejudice upon appropriate motion;
>
> 3.    Such Amended Complaint may join Clover Network, LLC and TD Bank USA National Association as well as any other prospective defendant in a single Amended Complaint either under this case, or under *Schiavo v. TD Bank USA National Association,* C.A. No. N24C-08-107 FWW; and
>
> 4.    The Court will strike any Amended Complaint that includes language personally attacking opposing counsel or the Court.[108]

Thus, the ground rules were clearly established for any amended complaint Schiavo wished to file.

---

[106] *Id.*

[107] *Schiavo v. Clover Network, LLC,* 2025 WL 551690 (Del. Super. Ct. Feb. 19, 2025).

[108] *Id.* at *5.

Schiavo did not take the dismissal well. His first letter, dated February 20th, addressed to the Court, included, *inter alia*, requests for permission to file a reargument motion and to request an evidentiary hearing.[109] His requests were accompanied by a threat to "contact the U. S. Attorney's Office to file an official complaint against you and the attorneys for TD Bank and Clover" if his requests were not granted.[110] After an exegesis on judicial ethics, he wrote:

> before I take legal actions against you for violating court rules and your extreme bias towards me, and against the attorneys for Clover and TD Bank, along with the collection agency TD Bank employed to defraud me out of almost 11,000 dollar, I'm requesting you grant me leave to file a motion to reconsider your dismissal of my original complaints…[111]

He also challenged the accuracy of the transcript of oral argument – "after reading the same it appears the transcripts of the oral argument ***have been altered*** and are by no means complete."[112] He continued:

> Judge Farris [sic] W. Wharton, if I'm correct and the transcripts of the oral argument have been altered, this altering of the transcript of the oral argument will also become a topic of conversation I will be presenting to the Delaware Judicial Ethics Advisory Committee and the Commission on Judicial Conduct along with the State Attorney General's office sometime next week if I have to

---

[109] D.I. 39.
[110] *Id.*
[111] *Id.*
[112] *Id.* (emphasis in original).

25

go to war to protect my constitutional rights of due process.[113]

He then selected 23 portions of the oral argument transcript to critique the Court in disparaging fashion. To cite only one example:

> 2) Judge Farris [sic] W. Wharton, on page 9 of the transcripts of the oral argument, I Charles Schiavo simply said I didn't hear that last comment, and instead of politely stating to the attorney for TD Bank please repeat your last statement, you Judge Farris [sic] W. Wharton went berserk starting at page 9 lines 10-23 and lasting to page 10, lines 1-16, you started acting like a crazy person, demeaning me for simply saying I didn't hear the last statemen; this type of egotistical demeanor can only come from someone that holds an unhealthy hatred for someone or is a complete bigot, holding a god-like attitude towards anyone not on their professional level, because they don't wear a black robe. Trust me, it was disgusting to endure and completely uncalled for, treating people with respect is essential if you expect to get respect in return.[114] Judge Farris [sic] W. Wharton the next time we meet I expect an apology for your unprofessional and intolerable behavior displayed during oral argument and I'm sure the Delaware Judicial Ethics Advisory Committee and the Commission on Judicial Conduct along with the Attorney [sic] General Office will whole heartedly agree.[115]

---

[113] *Id.*

[114] The irony here is not lost on the Court.

[115] D.I. 39. The cited section of transcript reads:

> **MR. SCHIAVO:** I didn't hear that last comment.
>
> **THE COURT:** Mr. Schiavo, you don't talk to opposing counsel, you talk to me. Okay?

Schiavo's letter continued in that vein. On February 26th, the Court granted his request to file a reargument motion[116] with the caveat that it must be filed within five days and comply with Rule 78(b)'s page limitations.[117] It denied his request for an

**MR. SCHIAVO:** I'm sorry You Honor. I just didn't understand.

**THE COURT:** When you talk, you stand.

**MR. SCHIAVO:** Got it.

**THE COURT:** These are rule, ground rules of the Court.

**MR. SCHIAVO:** I understand.

**THE COURT:** So I understand what you are trying to say is you didn't hear his last comment.

**MR. SCHIAVO:** That's correct.

**THE COURT:** Okay? It comes through me, not directly to him.

**MR. SCHIAVO:** I apologize.

**THE COURT:** All right. Fair enough. Apparently Mr. Schiavo didn't hear what you said. Go back to going into a Rule 56 motion. Hr'g. Tr. at 9:10-10:16 (Dec. 4, 2024), D.I. 32.

[116] The Court had never required Schiavo to seek leave to file such a motion.
[117] D.I. 40.

evidentiary hearing.[118]  It was not until  March 7th that Schiavo filed his reargument motion.[119]  The motion was denied because it was untimely and because it simply rehashed what Schiavo had argued previously.[120]

Instead of filing an amended complaint, Schiavo wrote the Court on March 20[th][121] and again on the 21st.[122]  The March 20th letter repeated arguments about the third credit card payment and included this comment:

> …it became apparent that you never really grasped the salient points of the complaint evidenced by your irrational claims that my complaint should have been filed against Asplundh Engineering, which is completely insane. Judge no one possessing any cognitive reasoning power whatsoever could make such an uneducated, and completely contradictory comment that my claim should be against Asplundh Engineering unless they are cognitively disabled, a complete bigot, or they are being bribed by TD Bank and/or Clover.[123]

Schiavo asked for an additional two weeks to file his amended complaint.[124]  The March 21st letter, captioned "Regarding: Pissed off!," reargued the Court's order dismissing Schiavo's Complaint yet again.[125]  That letter expressed his feelings

---

[118] *Id.*
[119] D.I. 43.
[120] D.I. 44.
[121] D.I. 48.
[122] D.I. 49.
[123] D.I. 48.
[124] *Id.*
[125] D.I. 49.

about the Court – "I am questioning your integrity, no one in possession of their cognitive skills or is not on the take can perform their job as poorly as you have over the last six months" and "I'm perfectly convinced these proceedings are a scam, no judge can do his job as poorly as you have without being on the take."[126] This letter also asked for an additional two weeks to file an amended complaint and for permission to add defendants.[127]

It was at this point where the Court's patience with Schiavo ended and it determined to address Schiavo's conduct. Citing his March 20th letter and the numerous instances where the Court had admonished him to abstain from intemperate filings and to avoid *ad hominum* attacks on opposing counsel and the Court, on March 24th the Court issued an Order pursuant to Rule 64.1 for Schiavo to appear before the Court and show cause why he should not be held in civil contempt for the language of his March 20th letter in violation of the Court's Orders regarding intemperate language.[128]

Prior to the Rule 64.1 hearing on April 11th, the Court received a letter from Schiavo.[129] In that letter he objected to the Court presiding at the hearing and

---

[126] *Id.*
[127] *Id.*
[128] D.I. 51.
[129] D.I. 67.

demanded a jury trial.[130]  He also says that he has "contacted several psychiatrists in the State of Delaware, ***without referencing any names***, I requested, to have you analyzed to determine if you are suffering from cognitive issues, or if you are a complete bigot, meaning you hate every pro se litigant or possible accepting a bribe from the defendants."[131]  He requested that the Court provide a letter immunizing any such psychiatrist from retaliation.[132]

On April 11th, the Court held a hearing pursuant to Rule 64.1 where Schiavo had the opportunity to show cause why the Court should not find him in civil contempt.  At that hearing, Schiavo acknowledged notice of the Court's Orders directing him to refrain from using uncivil language in his filings.[133]  However, when given the opportunity to show cause why he should not be held in civil contempt, he was unrepentant, insisting on the truth of his allegations about counsel and the Court while attempting to relitigate the merits of his case.[134]  The Court found Schiavo in civil contempt and required him to pay a sum of $1,000.00 in each case in order to insure that any amended complaint: (1) complied with the pleading requirements of Superior Court Civil Rules 8(a), 9(b) (if fraud were alleged), 10 (especially 10(b)),

---

[130] *Id.*

[131] *Id.* (emphasis in original).

[132] *Id.*

[133] *Schiavo v. Clover Network, LLC,* 2025 WL 1088547 (Del. Super. Ct. Apr.11, 2025).

[134] *Id.* at *2.

and 15(aa); (2) that each claim was stated in separate counts, *i.e.* theft, fraud, breach of contract, *etc.*, and stated all of the elements necessary to allege such claim or risk dismissal with prejudice upon appropriate motion.[135] The Court warned Schiavo that it would strike any amended complaint that included language personally attacking opposing counsel or the Court.[136] It advised him that the sanction was not intended to be punitive. Rather, it was intended to cause him to amend his behavior and comply with this Court's expectations regarding civility towards opposing counsel and the Court in any future filings.[137]

Schiavo paid the required sums and filed the Amended Complaint on May 5th.[138] Despite being warned repeatedly to comply with specific rules of pleading, the Amended Complaint fails. It contains no clear statement of claims, and no counts set off and identified with specificity. It fails to satisfy Rule 8(a). Despite incanting "fraud" incessantly, it fails to properly set out the elements of fraud or meet the particularity requirement of Rule 9(b). While Schiavo numbers the paragraphs, he fails to confine them to "a statement of a single set of circumstances," nor does he assert each claim "in a separate count" as required by Rule 10(b).[139] It makes no

---

[135] *Id.* at *3.
[136] *Id.*
[137] *Id.*
[138] Amend. Compl., D.I. 79.
[139] Super. Ct. Civ. R. 10(b).

attempt to satisfy Rule 15(aa)'s requirement to differentiate the Amended Complaint from the original Complaint.

Finally, the Amended Complaint continues Schiavo's assault on opposing counsel and the Court. In Paragraph 3 he writes, "[H]owever, the Court has discarded the truth established by hard evidence while believing in the unfounded allegations by the attorneys for Clover and TD Bank, which is a clear violation of Delaware Superior Court Rules. **(See Exhibit Titled Delaware Superior Court Rules)**."[140] The Rules to which Schiavo cites in the exhibit are Delaware Lawyers' Rules of Professional Conduct Rules 3.3: Candor Toward the Tribunal and 8.4: Misconduct and Superior Court Civil Rule 11: Signing Pleadings, Motions, and Other Papers: Sanctions.[141] The exhibit also includes a section captioned "Penalties for Lying to the Court.[142] For good measure Schiavo adds sections on: (1) Judicial Ethics and Behavior, citing Delaware Code of Judicial Conduct Canon 2(A) regarding impropriety and the appearance of impropriety; (2) Criminal Behavior, citing Obstruction of Justice, and Misconduct in Office ; and (3) Violations of Court Rules.[143] Similarly, in Paragraph 5.6 he writes, that in order for the Court to have dismissed his Complaint it had to:

---

[140] Amend. Compl., at ⁋ 3 (emphasis in original), D.I. 79.
[141] *Id.* at Exhibit Titled Delaware Superior Court Rules.
[142] *Id.*
[143] *Id.*

completely rely on the unfounded allegations made by the attorneys for TD Bank and Clover as exculpatory evidence with absolutely no documentation[s] to support their claims, **(Zero)** which must call into question the integrity of Judge Farris [sic] W. Wharton in the minds of everyone involved in these proceedings, including the Plaintiff…"[144]

He continues in Paragraph 6:

Therefore, the Court, relying upon the erroneous and fabricated allegations advanced by the defense attorneys during these entire proceedings and oral argument, has/ violated the Plaintiff's constitutional rights of due process, which must result, if it continues in complaints being filed specifically against the attorneys for Clover and TD Bank, their respective law firms and the State of Delaware due to the actions of Judge Farris [sic] W. Wharton during these entire proceedings.[145]

He writes in Paragraph 7, "for the Judge Farris [sic] W. Wharton to believe otherwise must bring into question his integrity."[146] And, in Paragraph 8, "Therefore, the above illogical and completely in accurate [sic] conclusion, made by Judge Farris [sic] W. Wharton, stands at the foundation of the reasons why the Plaintiff called into question the integrity of the attorneys…"[147] He concludes the Amended Complaint with the threat that:

---

[144] *Id.* at ℙ 5.6 (emphasis in original).
[145] *Id.* at ℙ 6.
[146] *Id.* at ℙ 7.
[147] *Id.* at ℙ 8.

> if this Chicanery continues, the Plaintiff is going to file a complaint against the attorneys for TD Bank and Clover inclusive of their respective law firms for patently misrepresenting the facts to the Court and the Plaintiff will be forced to bring Judge Farris [sic] W. Wharton in front of a discipline committee…[148]

These citations are merely examples. Virtually the entire Amended Complaint is a frontal attack on opposing counsel and the Court.[149] If that were not enough, Schiavo attaches exhibits repeating comments for which he was held in civil contempt.[150]

Schiavo's Response to Clover's Motion to Dismiss, if anything, is even worse. In Paragraph 3 he writes:

> In paragraph (2) the Clover attorney continues to advance his [sic] erroneous understanding of Superior Court Rule 12(b)(6) in hopes of obtaining another dismissal. The Clover attorney has the gall to suggest that the Plaintiff is advancing "conclusory allegations that lack factual support."[151]

---

[148] *Id.* Conclusion at 26.
[149] Examples of his attacks on TD Bank's counsel are set out in the Court's Memorandum Opinion dismissing his Amended Complaint against TD Bank. *Schiavo v. TD Bank USA National Association,* 2025 WL _____ (Del. Super. Ct. Jl. 28, 2025). Needless to say, a complaint should contain comments critical of counsel only in the rarest of circumstances, if ever.
[150] *See, Id.* Exhibit Titled Motion to Strike, at 5 ("Judge Farris [sic] W. Wharton is either mentally incognizant [sic] or a complete bigot…"); Exhibit Titled Letter Addressed to Judge Farris [sic] W. Wharton Titled "Pissed Off."
[151] Pl.'s Resp. at ℙ 3, D.I. 84.

34

In Paragraph 7 he writes:

> In Paragraph (8), the Clover attorney's entire statement says Plaintiff "provides no facts sufficient to allege the necessary elements of a fraud claim." This statement is a complete mockery of the intellectual ability of the court. The only human being presenting any form of evidence to the Court throughout these entire proceedings has been the Plaintiff, not the Attorneys for the defendants. The Plaintiff suggests that the Clover attorney start considering the ramifications of the Superior Court rules, **see Exhibit Titled Rules Violations for Attorneys and Judges,** before making similar unsubstantiated comments.[152]

The referenced exhibit is the same one he referenced in Paragraph 3 of his Amended Complaint related to certain ethical rules for attorneys and judges and the consequences for violating those rules.[153]

In Paragraph 8 he writes, "In Paragraph (9), the Clover attorney starts with comments about pleading fraud with particularity. And concludes with 'the Plaintiff does not and cannot do so.' The Clover attorney should re-read the Amended Complaint."[154] In Paragraph 9 he writes, " In Paragraphs (10 and 11) the Clover attorney makes a comment that's so convoluted it's impossible to answer."[155]

---

[152] *Id.* at ⁋ 8 (emphasis in original).
[153] *Id.* at Exhibit Titled Rules Violations for Attorneys and Judges; Amended Compl. at Exhibit Titled Delaware Superior Court Rules, D.I. 79.
[154] *Id.* at ⁋ 8.
[155] *Id.* at ⁋ 9.

In Paragraph 14 he writes:

> In Paragraphs (18-22), the Clover attorney says the Plaintiff failed to comply with Superior Court Rules. The Plaintiff suggests the Clover attorney start obeying Superior Court Rules before asking the Court to dismiss Plaintiff's complaint for violating court-imposed sanctions, which are far less egregious than the actions of defense attorneys throughout these entire proceedings.[156]

Finally, in Paragraph 15 he writes:

> In Paragraphs (23 and 24), the Clover attorney says the Plaintiff continues to include baseless allegations against the attorneys and the court, the only person who has protected his integrity throughout these entire proceedings is the Plaintiff. Therefore, the accusations of misconduct are by no means baseless and unfounded; they are extremely accurate. The conduct of the other parties has been less than ethical and professional.[157]

For nearly a year now, Schiavo persistently has failed to abide by the Court's orders, both in terms of civility and rules of procedure. The Court has no expectation that he would amend his behavior going forward if he were permitted to do so. Such an expectation would be a fool's errand upon which the Court will not embark. The Court will not subject counsel to Schiavo's vituperative should they be required to engage with him personally or to attend unchaperoned depositions if the Court

---

[156] *Id.* at ¶ 14.
[157] *Id.* at ¶ 15.

allowed the case to go forward. Further, there is no reason to believe Schiavo would honor the rules of evidence at a trial any more that he has honored the rules of civil procedure thus far.

Schiavo either is unable or unwilling to abide by the Court's rules and its expectations of civility. The Court will countenance Schiavo's contumacious behavior no longer. It must end and it does now.

## VI. CONCLUSION

**THEREFORE,** for the reasons explained above, Defendant Clover Network, LLC's Motion to Dismiss is the Amended Complaint is **GRANTED.** The Amended Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.